**FILED**

SEP 25 2007



UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| DEBRA J.A. FIEBELKORN, * | |
| * | CIV. 06-4140 |
| * | MEMORANDUM OPINION |
| Plaintiff, * | AND ORDER RE: |
| vs. * | APPOINTMENT OF |
| * | COUNSEL AND SUMMARY |
| S.D. DEPT. OF HEALTH, * | JUDGMENT |
| * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending before this Court are Plaintiff Debra J.A. Fiebelkorn's fourth request for appointment of counsel (Doc.34 )[1] and Defendant South Dakota Department of Health's Motion for Summary Judgment (Doc. 40). This Court has denied Plaintiff's earlier requests for counsel without prejudice and allowed Plaintiff to make the request at a later time. Doc. 7. In denying the earlier requests, this Court stated:

> There is no constitutional or statutory right to appointment of counsel in civil cases. *Rayes v. Johnson*, 969 F.2d 700, 702 (8th Cir. 1992). In evaluating a request for appointment of counsel, this Court considers "whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present [her] claim."*Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996).

Plaintiff, a registered nurse, responded to Defendant's Motion for Summary Judgment by submitting a response to the Statement of Material Facts which exceeds 80 pages. Plaintiff contends she has sought the representation of twelve attorneys who have declined to represent her. The Court concludes that Plaintiff, an individual with a formal education, is capable of addressing the factual

---

[1] Although the pleading was entitled "Motion to amend pleadings of discrimination" and the pleading contained allegations and attachments regarding the case, the only request in the pleading was for appointment of counsel. The Court is considering the allegations and attachments, however, in ruling on the motion for summary judgment.

allegations in this case and that the resolution of the legal issues would not be altered by appointment of counsel. For these reasons Plaintiff's fourth motion for appointment of counsel is denied.

**Principles of Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Eighth Circuit has observed that "summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998), *quoted in Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000). However, the Eighth Circuit has noted "there is no 'discrimination case exception' to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir.1999)).

## Statement of Facts

Plaintiff is a registered nurse, with a background which includes among other past accomplishments and honors, Who's Who in Nursing, President of South Dakota Nurses Association and Nurse of the Year for District 11, and nursing instructor at the University of South Dakota. Plaintiff was employed as a registered nurse at the South Dakota State Penitentiary between March 2003 and May 2005.

In a letter dated August 31, 2004, sent to the Director of Nursing at the South Dakota State Penitentiary, Plaintiff's psychiatrist, Dr. Francis Bandettini, stated that Plaintiff had "evidence of at least a physical disability" based on the strong possibility of severe hypertension from medication, an abnormal hematological condition and untreated thyroiditis. In this letter Dr. Bandettini contended that Plaintiff was willing and able to do her job, but may need reasonable accommodation, including leave "which would be very transient in nature."

In November of 2004 Plaintiff's supervisor spoke to Plaintiff and then presented Plaintiff with a memorandum citing the following alleged deficiencies in Plaintiff's performance:

- bringing in a switchblade knife to the penitentiary
- borrowing medication from one offender for another in turn causing a wrong medication to be administered
- signing offender # 39648 MAR for a medication that was not administered
- not utilizing a BID PRN order for a decompensating offender but instead contacting the psychiatrist for a medication order
- informing an offender with a mental illness that you would not Administer a PRN medication until you received an apology
- request not to work night shifts because your doctor said "definiately (sic) no nights at work"

In response to her supervisor's memorandum, Plaintiff stated in writing that Plaintiff's charge nurse maintained that Plaintiff was doing her work and was not having the deficiencies mentioned in the supervisor's memorandum. Plaintiff also maintained that she had fewer medication errors than average and that Plaintiff's job skills and knowledge were above average based on her extensive background in nursing. Plaintiff further stated, "However, I am only human and I make mistakes just like any body else." In correspondence dated November 18, 2004, Dr. Bandettini wrote Plaintiff's supervisor and stated that Plaintiff was taking medication that would affect Plaintiff's ability to function if the medication were not taken on a regular basis and asked if it was possible to allow Plaintiff to

work the day shift only.

In a memorandum dated February 14, 2005, Plaintiff's supervisor documented speaking with Plaintiff regarding alleged incompleteness of documentation, transcription errors, and conversations of a personal nature with staff. On February 21, 2005, Dr. Bandettini wrote Plaintiff's supervisor and stated that in consideration of the Americans with Disabilities Act he and Defendant should exchange information. On March 1, 2005, Plaintiff's supervisor wrote Dr. Bandettini that Defendant was willing to make reasonable accommodations but that work performance errors that would jeopardize the well being of the patients could not be tolerated. Defendant granted Plaintiff's requests that she not be scheduled night shifts, that she not be scheduled more than three days in a row, and that she be given a one-week leave of absence to adjust to a new medication schedule. In correspondence dated March 15, 2005, to Defendant's Human Resources Manager, Dr. Bandettini wrote that he felt that with regard to accommodations, Plaintiff's supervisor and Human Resources had adequately fulfilled their obligation under the Americans with Disabilities Act.

Plaintiff applied for a job transfer to Watertown, South Dakota in the spring of 2005. Plaintiff contends that this was a reasonable request for accommodation which was overlooked or forgotten by Defendant. Plaintiff states, " I may or may have not been able to handle the position, due to the fact any job away from the hostilities of the penitentiary and [my supervisor] may have been all I needed to be on the road to recovery."

Plaintiff was hospitalized in April of 2005 for bronchitis and pneumonia. Plaintiff's internal medicine physician opined that Plaintiff had been completely disabled between March 21, 2005, and April 27, 2005. In correspondence dated May 26, 2005, Dr. Bandettini wrote Plaintiff's supervisor that he had met with Plaintiff on May 25, 2005, and that "medically speaking she is not able to continue her job at this point." Dr. Bandettini concluded that it would be appropriate for Plaintiff to file for disability "for both mental health reasons as well as medical reasons."

Defendant terminated Plaintiff's employment on May 26, 2005. Defendant contends that it terminated Plaintiff's employment because Plaintiff continued to make serious nursing errors, which included making a transcription error resulting in a post-surgery dressing not being changed for a week, transcribing the wrong treatment for a patient, and ordering an EKG on a patient without a doctor's order.

Plaintiff applied for and received Social Security disability benefits. Documentation from the

Social Security Administration reveals that Plaintiff contended she had become disabled on August 31, 2004, but that her earnings were above the requirements of the disability program until March 15, 2005. The Social Security Administration ultimately determined Plaintiff was eligible for benefits beginning March 15, 2005.

## WHETHER THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CLAIM?

Defendant maintains that the Eleventh Amendment bars Plaintiff's claim. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has long held that states enjoy immunity from lawsuits by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Klingler v. Director, Dept. of Revenue, State of Mo.* 455 F.3d 888, 893 (8th Cir. 2006). The Supreme Court has also held that states and their agencies enjoy sovereign immunity from lawsuits seeking money damages that are filed pursuant to Title I of the Americans with Disabilities Act (ADA), which prohibits employment discrimination on the basis of disability.[2] *Board of Trustees of Univ. Of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *Klingler*, 455 F.3d at 893. The Eleventh Amendment, however, is not a bar to federal jurisdiction over an ADA suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law. *See Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718 (8th Cir. 2001).

Plaintiff has brought this action under Title I of the ADA against only the state agency and not against a state official. In addition, Plaintiff has sought only monetary damages and has not sought prospective injunctive relief. This action is thus barred by the Eleventh Amendment.

---

[2] Title II of the ADA, however, which deals with participation in and benefits of the services, programs or activities of a public entity, validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151 (2006).

# WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BASED ON THE UNDISPUTED MATERIAL FACTS?

Defendant also contends that it is entitled to summary judgment based on the undisputed material facts. In this case there is an absence of evidence of direct discrimination, so Plaintiff's ADA claim is evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To present a prima facie case of discrimination based on a disability under the Americans with Disabilities Act, a plaintiff must show the following: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) that she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *See Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044-1045 (8th Cir. 2005); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1318 (8th Cir.1996).

The Eighth Circuit Court of Appeals has formulated a two pronged test to determine whether a person is "qualified" within the meaning of the ADA: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111-1112 (8th Cir. 1995)(citing 42 U.S.C. § 12111(8), 29 C.F.R. § 1630.2(m) (1994)). Although Plaintiff has established that she met the necessary prerequisites for employment as a nurse for Defendant, she has failed to establish that at the time her employment was terminated she could perform the essential job functions, with or without reasonable accommodation.

Plaintiff's psychiatrist conceded that in March of 2005 Defendant had adequately fulfilled its obligation with regard to any requested accommodations. Plaintiff's physician characterized Plaintiff as being completely disabled between March 21, 2005, and April 27, 2005. Also, Plaintiff's psychiatrist opined on May 25, 2005, that it was appropriate for Plaintiff to file for disability "for both mental health reasons as well as medical reasons." Although Plaintiff states she "may or may have not been able to handle" the Watertown position she applied for in the spring of 2005, her statement is not fully consistent with the positions taken by her physicians and Plaintiff's statement is far too equivocal to establish that Plaintiff was a qualified individual under the ADA. For this additional reason, summary judgment in favor of Defendant is appropriate. Accordingly,

IT IS HEREBY ORDERED:

(1) that Plaintiff's Plaintiff's fourth motion for appointment of counsel (Doc. 34) is denied;

(2) that any motion to amend pleadings is granted to the extent that the Court considered the allegations in and attachments to Docket No. 34; and

(3) that Defendant's motion for summary judgment (Doc. 40) is granted.

Dated this 25th day of September, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)   DEPUTY

7